[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11101
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cv-62276-RS

MITCHE A. DALBERISTE,

Plaintiff - Appellant,

versus

GLE ASSOCIATES, INC.,
a Florida Corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 19, 2020)

Before MARTIN, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Mitche Dalberiste ("Dalberiste") appeals the district court's grant of summary judgment in favor of GLE Associates, Inc. ("GLE") and moves for summary affirmance. For the following reasons, we grant Dalberiste's motion and summarily affirm the decision below.

## I.    FACTUAL AND PROCEDURAL HISTORY

Dalberiste is a practicing Seventh-day Adventist whose religion forbids him from working on the Sabbath, which occurs from sundown on Friday to sundown on Saturday. In April 2016, Dalberiste applied for an industrial hygiene technician position at GLE, a company that provides worksite engineering, architectural, and environmental services, including asbestos monitoring by industrial hygienist technicians.

One of GLE's customers is Turkey Point Nuclear Generating Station ("Turkey Point" or "station"). Each year, Turkey Point schedules planned outages, where part of the station is closed for maintenance. An outage typically lasts from thirty to sixty days but in one year lasted eighty days. GLE was hired for the Fall 2016 outage. Turkey Point, and not GLE, determines the number of GLE technicians needed to work during an outage.

GLE technicians assigned to Turkey Point for the outages are required to pass extensive background checks and complete several safety and training courses before they can begin working at the station. Having satisfied these requirements,

2

the technicians are given a badge to enter and work in Turkey Point during the outage. Because Turkey Point intends to resume operations as quickly as possible, GLE technicians assigned to Turkey Point during an outage are expected to work seven days per week in twelve-hour shifts.

In April 2016, Dalberiste was interviewed by GLE for a technician position. GLE initially did not hire Dalberiste and issued a turndown letter around April 28, 2016. Dalberiste reapplied for the same position in June 2016, and on June 21, 2016, GLE offered him the technician position. Dalberiste's offer letter stated that he might be required to work nights and weekends. After Dalberiste accepted the position, he informed GLE for the first time that he would not be able to work from sundown Friday to sundown Saturday. GLE did not offer to accommodate Dalberiste's religious observance and rescinded its job offer in July 2016.

Later that month, Dalberiste filed a charge of discrimination with the Equal Employment Opportunity Commission, which gave him a Notice of Right to Sue letter in June 2018. On September 21, 2018, Dalberiste sued GLE and alleged that the company engaged in religious discrimination, retaliated against him based on his religion, and failed to accommodate his religious observance in violation of Title VII and the Florida Civil Rights Act.

GLE moved for summary judgment on the grounds that it could not have accommodated Dalberiste without incurring undue hardship. After finding that

3

Dalberiste established a prima facie case of religious discrimination, the district court turned to GLE's burden to demonstrate that it could not reasonably accommodate Dalberiste without undue hardship to its business. Dalberiste argued that GLE could have shifted other technicians' work schedules and duties to accommodate his religious observance. Relying on *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), however, the district court concluded that Dalberiste's proposed accommodations would force GLE to bear more than a de minimis cost. The district court reasoned that Dalberiste's accommodations would require other GLE technicians to bear an additional workload of an already demanding job, would force GLE to change its scheduling and work assignment procedures, would force GLE to incur additional costs to hire an additional employee, would put GLE's contract with the plant at risk, and would affect Turkey Point's badging and security procedures. In light of these efficiency, administrative, and safety costs, the district court granted summary judgment in favor of GLE. Dalberiste filed a timely notice of appeal.

In March 2020, Dalberiste filed an unopposed motion for summary affirmance and asked this Court to summarily affirm the district court's decision. Conceding for the purposes of this appeal that the district court correctly applied *Hardison*'s de minimis cost standard, Dalberiste—raising this argument for the first time on appeal—states that *Hardison* was wrongly decided. Noting our inability to overrule

4

binding Supreme Court precedent, Dalberiste moves this Court to summarily affirm the decision below so he can file a writ of certiorari before the Supreme Court and directly challenge *Hardison*. This is the only argument Dalberiste makes on appeal.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, "viewing the evidence in the light most favorable" to the non-moving party and "drawing all inferences in h[is] favor." *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1283 (11th Cir. 2012). Although a party may make a concession on appeal, that "is by no means dispositive of a legal issue." *Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253 (1999).

Summary disposition is appropriate in "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where, as is more frequently the case, the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).[1]

## III. ANALYSIS

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all Fifth Circuit decisions issued before October 1, 1981, as binding precedent.

Title VII prohibits workplace discrimination on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "Religion" is defined as "all aspects of religious observance and practice, as well as belief."  *Id.* § 2000e(j). Generally, an employer is required to accommodate an employee's religious practices.  29 C.F.R. § 1605.2.  However, if "an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without *undue hardship* on the conduct of the employer's business," the employer need not provide an accommodation.  § 2000e(j) (emphasis added); *see also* 29 C.F.R. § 1605.2(b)(1) (stating that it is an unlawful practice "for an employer to fail to reasonably accommodate the religious practices of an employee . . . unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business").

"In religious accommodation cases, we apply a burden-shifting framework akin to that articulated in *McDonnell Douglas Corp. v. Green*."  *Walden*, 669 F.3d at 1293 (citing *McDonnell Douglas*, 411 U.S. 792 (1973)); *see also Patterson v. Walgreen Co.*, 727 F. App'x 581, 585–89 (11th Cir. 2018), *cert. denied*, 140 S. Ct. 685 (2020).  The employee has the initial burden to establish a prima facie case of religious discrimination and must show that "(1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of his belief; and (3) he was discharged for failing to comply with the conflicting

6

employment requirement." *Beadle v. Hillsborough Cty. Sheriff's Dep't*, 29 F.3d 589, 592 n.5 (11th Cir. 1994) (referencing *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 144 (5th Cir. 1982)).  The employee need not show that "employer has 'actual knowledge' of" his "need for an accommodation"; the employee "need only show that his need for an accommodation was a motivating factor in the employer's decision." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015).

After the employee establishes his prima facie case, the burden shifts to the employer to establish that it provided the employee with a reasonable accommodation or that an accommodation would cause an undue hardship.  *Beadle*, 29 F.3d at 591–93; *see* § 2000e(j).  The Supreme Court in *Hardison* "described 'undue hardship' as any act requiring an employer to bear more than a '*de minimis* cost' in accommodating an employee's religious beliefs."  *Beadle v. City of Tampa*, 42 F.3d 633, 636 (11th Cir. 1995) (quoting *Hardison*, 432 U.S. at 84).  A "*de minimis* cost" includes "not only monetary concerns, but also the employer's burden in conducting its business."  *Id.*

In his unopposed motion for summary affirmance, Dalberiste acknowledges that *Hardison* is binding precedent and further stipulates for purposes of this appeal that the accommodation he requested would impose more than a de minimis burden on GLE.  Dalberiste argues for the first time, however, that *Hardison* was wrongly decided and that the Supreme Court should overturn its decision.  It is, of course,

7

one of the fundamental principles of our judicial system that we do not have the authority to overrule Supreme Court precedent. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982); *Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983). As such, summary affirmance is appropriate here because "there can be no substantial question as to the outcome of the case." *Groendyke Transp.*, 406 F.2d at 1162. Dalberiste's motion for summary affirmance is granted, and the district court's grant of summary judgment in favor of GLE is affirmed.

**AFFIRMED.**